WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shannon E. Foust, et al., | No. CV-12-08115-PCT-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Page, et al., | |
| Defendants. | |

Defendants City of Page, Officer Wilson and his spouse, and Chief Charles Dennis and his spouse (collectively, "Defendants") have filed a motion for summary judgment. Docs. 85, 86. The motion has been fully briefed. Docs. 92, 93, 98. Plaintiffs seek leave to amend their complaint to add as Plaintiffs the Estate of William Dale Foust and Brynn Foust D'Avello as personal representative of the Estate. Doc. 91. That motion is also fully briefed. Docs. 96, 97. For the reasons stated below, Defendant's motion for summary judgment will be granted in part and denied in part and Plaintiff's motion to amend will be denied.[1]

**I.  Background.**

Toni Foust and Decedent Bill Foust purported to marry in February 1996. Doc. 86, ¶ 1. The Fousts owned a watercraft store in the City of Page, which also served

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1    as their residence. *Id*., ¶ 2. During the time the Fousts lived there, Toni Foust called 911
2    on a number of occasions and filed for and received two orders of protection against
3    Decedent. *Id*., ¶ 3. Plaintiffs allege that these calls and orders were related to marital
4    disputes and verbal abuse by Decedent, but Defendants dispute this, asserting that Toni
5    Foust "believes 911 should be called when you need someone to come and help resolve a
6    situation" and that she "had a habit of calling the police every time she thought they
7    could assist her in a dispute related to her business or with Mr. Foust." Doc. 92, ¶¶ 4-5.
8    Defendants allege that Decedent was an active member of a sovereignty group who took
9    issue with police in general, was confrontational, and would not back down. Doc. 86,
10   ¶¶ 15-18. Defendants dispute these allegations. Doc. 92, ¶¶ 15-18.

11   On the morning of Sunday, June 19, 2011, Decedent spoke with his daughter,
12   Brynn Foust D'Avello, and told her that he was thinking about leaving Toni and moving
13   to California. Doc. 86, ¶ 21. Later that day Toni called 911 from the shop to report that
14   Decedent was loading paperwork from their business into his truck. *Id*., ¶ 23. The 911
15   dispatcher issued a domestic dispute call, to which Officer Wilson responded. *Id*., ¶ 24.
16   Wilson asked the dispatcher whether there was an order of protection in place. *Id*.
17   Wilson entered the Foust's shop in full uniform, with a camera affixed to his chest. *Id*.,
18   ¶¶ 26, 28.

19   Upon arrival on the scene, Wilson asked Toni what was going on. *Id*., ¶ 29. Toni
20   told him that Decedent was "pissed off" and was removing paperwork from the house.
21   *Id*., ¶ 30. Wilson then informed her that the removal of the paperwork was a civil matter
22   about which he could do nothing, and that only if physical violence was threatened could
23   he intervene. *Id*., ¶¶ 29-32. Toni then described an incident in which Decedent had
24   pushed a table at her and called her obscenities. *Id*., ¶ 33. Decedent then entered the
25   shop's front door and told Wilson that if he wanted to talk with Toni he would need to go
26   outside. *Id*., ¶ 36. Wilson refused and told Decedent "You don't tell me what to do, you
27   go stand over there," and that he was "good right here man." *Id*. Decedent then left the
28   building. *Id*. Toni informed Wilson that Decedent had a gun, to which Wilson replied

1 | "That is fine, so do I."  *Id*., ¶ 38.

2   Decedent re-entered the building and again told Wilson that he was not welcome in his shop, to which Wilson replied "I didn't ask you if I could be in here sir." *Id*., ¶ 40. Decedent asked Wilson for his name, to which Wilson gave his last name but refused to give his first. *Id*., ¶ 41. Decedent told Wilson "You better be careful the way you talk to me." *Id*. During this exchange, Toni gestured to Wilson and mouthed "call for backup." *Id*., ¶ 43. Wilson and Toni then left the building to continue their conversation. *Id*., ¶ 44. Toni informed Wilson that Decedent had been verbally abusive to her and told her that he did not know how much time she has left. *Id*.

While Toni and Wilson were talking, Decedent exited the building and got into his truck, which was parked near the shop. *Id*., ¶ 45. Decedent started his truck and moved it backwards as Wilson was passing near the rear of the truck. *Id*., ¶ 47, Doc. 92, ¶ 47. The parties dispute whether Decedent knew Wilson was behind the truck. Wilson approached the driver's side of the vehicle and struck the driver's side glass window, yelling "You don't run me over," "[g]et your ass over here right now," and, after Decedent got out of the car, "[g]et on the fuckin' ground right now." Doc. 86, ¶¶ 50-52. Decedent got back into his vehicle and tried to close the door, but Wilson attempted to hold it open, pulling the armrest off. *Id*., ¶ 54. The door was pulled open and Decedent emerged and the two struggled for the next few seconds, Wilson telling Decedent to get on the ground and Decedent attempting to get back into the truck. *Id*. During the struggle, Wilson deployed his taser and the two struggled over the taser, falling to the ground. *Id*., ¶¶ 57-59. At some point Wilson lost the taser, pulled his duty weapon, and pointed it at Decedent. *Id*., ¶¶ 60, 63. Officer Wilson fired two shots, striking Decedent in the chest and the forehead. *Id*., ¶ 67. Decedent fell forward and landed face down. *Id*. The entire encounter lasted approximately four and a half minutes from the time Wilson arrived at the business to the gunshots. Decedent died as a result of the gunshot wounds.

1    A .45 caliber Glock model handgun was later recovered from the passenger 2 compartment of Decedent's truck, loaded with 12 live rounds. *Id*., ¶ 69. Two witnesses 3 claimed to see at least some portion of the struggle between Wilson and Decedent and 4 both gave statements. *Id*., ¶¶ 71-83.

**II.    Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence only raises a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.   Analysis.**

    **A.    Assertion of § 1983 Claim by Surviving Daughters.**

Defendants argue that Plaintiff's § 1983 claim fails because Decedent's estate was not included as a plaintiff, and Plaintiffs, as third parties, did not assert a survival claim and cannot assert constitutional claims on Decedent's behalf. Doc. 85 at 9.

Fourth Amendment rights are personal and may not be asserted vicariously. *Alderman v. United States*, 394 U.S. 165, 174 (1969). "[T]he general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (citing

*Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987)). "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." *Moreland*, 159 F.3d at 369 (citing 42 U.S.C. § 1988(a); *Smith,* 818 F.2d at 1416–17). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Moreland*, 159 F.3d at 369.

Arizona law authorizes survival actions, but Plaintiffs did not bring a survival action, most likely because only representatives of the estate may bring such an action. *See* A.R.S. § 14-3110. Plaintiffs do not purport to represent the estate. Plaintiffs do appear to assert that they can bring a § 1983 claim on behalf of Decedent because they are his children (Doc. 93 at 11), but Plaintiffs cite no authority for this proposition. When a Fourth Amendment violation forms the basis of a § 1983 claim, and the state has a survival statute, such a claim can be asserted by the estate, but not by children of the victim merely by virtue of their status as children. *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987) ("The children were not directly subjected to the excessive use of state force and therefore cannot maintain personal causes of action under section 1983 in reliance on this Fourth Amendment theory.") (*overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n. 1 (9th Cir. 1999)). Plaintiffs cannot, therefore, assert § 1983 claims based on a Fourth Amendment theory.

A claim of excessive force under § 1983 has also been recognized as a substantive due process claim. *Smith*, 818 F.2d at 1417. The Fourteenth Amendment's Due Process Clause applies to governmental actions that impermissibly deprive one of a life, liberty, or property interest of constitutional magnitude. *Moreland*, 159 F.3d at 370 (citing *Board of Regents v. Roth,* 408 U.S. 564, 569–70 (1972); *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir. 1994)). The Ninth Circuit has recognized that "adult and minor children ha[ve] a cognizable liberty interest in their relationship with their

1 father." *Smith*, 818 F.2d at 1419. Plaintiffs in this case, however, do not allege that the Decedent's death deprived them of "his love, comfort, and support," as was alleged in *Smith*. *Id*. The complaint alleges only that the excessive force killed Mr. Foust; it says nothing about injuries suffered by his daughters. Where a party has "identified no life, liberty, or property interest of which they were deprived," the only potential claims are those on behalf of the Decedent's estate. *Moreland*, 159 F.3d at 370-71. And as noted above, claims on behalf of Decedent's estate have not been properly asserted in this case.

## B. Motion to Amend.

Plaintiffs seek leave to amend their complaint to add the Personal Representative ("PR") of Decedent's estate as a plaintiff. Doc. 91. While acknowledging that the Court's deadline for amending pleadings passed some seven months before the motion to amend was filed,[2] Plaintiffs assert that a "late and wholly unexpected discovery" that Toni Foust and Decedent were never legally married, followed by what they allege was months of confusion and dissention within the family, prevented them from adding the PR until now. Doc. 91 at 1-2. Defendants argue that there is no good cause for Plaintiffs' delay, as Plaintiffs knew about the illegitimacy of the marriage for at least six months before they sought to have a PR appointed, and that they made a strategic decision not to include the estate as a plaintiff at the outset of the case. Doc. 96. Defendants also argue that they will be unduly prejudiced by the addition of the estate as a party. *Id*.

When a party seeks leave to amend after the deadline for doing so has passed, the Court is confronted with a two-step inquiry: (1) whether Plaintiffs have demonstrated "good cause" to modify the Case Management Order under Rule 16(b)(4) of the Federal Rules of Civil Procedure, and (2) whether Plaintiffs' proposed amendment should be granted under Rule 15.

---

[2] The Case Management Order set the deadline to add parties as March 30, 2013. Plaintiffs filed their motion to amend on January 30, 2014.

1	Deadlines established in a case management order may "be modified only for good cause[.]" Fed. R. Civ. P. 16(b)(4); *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). "Good cause" exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Comm.'s Notes (1983 Am.). Thus, "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Where that party has not been diligent, the inquiry ends. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson*, 975 F.2d at 609.

Plaintiffs argue that "once the unexpected situation was discovered, Plaintiff moved as swiftly as possible to correct the potential problem." Doc. 91 at 9. Plaintiffs assert that they did not discover that the marriage was invalid until June, 2013 – three months after the amendment deadline. At that point, Plaintiffs assert, there were "competing claims to the estate" and "a breakdown in the working relationship" between Toni and her two stepdaughters, the other Plaintiffs in the case. Doc. 97 at 6. Plaintiffs assert that they attempted to initiate probate of the estate throughout the summer of 2013, and contacted opposing counsel to inform them of their plans to appoint a PR and amend the complaint. Doc. 97-1 at 3.

The Court cannot conclude, however, that Plaintiffs acted diligently. Plaintiffs concede that they learned in late June of 2013 that Toni was not legally married to Decedent. Indeed, Plaintiffs filed a motion to dismiss Toni from the case on July 1, 2013. Doc. 67. Despite this knowledge, Plaintiffs allowed the fact discovery deadline to pass on July 26, 2013, the expert disclosure and deposition deadlines to pass later in 2013, the summary judgment deadline to pass on December 13, 2013, and another six weeks to pass before they filed a motion to amend their complaint. It was not until after Defendants had filed a motion for summary judgment identifying the defect in Plaintiffs' case that they even sought appointment of the PR. Plaintiffs argue that internal family issues caused the delay, but they do not explain why these issues prevented them from

seeking appointment of the PR and amendment of the complaint, or why they were able to act within one week to seek appointment of the PR after Defendants filed their motion for summary judgment. Nor do they explain why they allowed seven months to elapse without advising the Court that a key party to the case was missing and they would need to amend the complaint as soon as the PR was appointed. The Court is not persuaded that Plaintiffs acted diligently to resolve the issue that became apparent in June of 2013.

Even if the Court did find good cause for the late motion to amend, the motion would not pass muster under Rule 15. Although the Court "should freely give leave [to amend] when justice so requires," the liberal policy in favor of amendments under Rule 15 has limitations. Motions to amend should not be granted if there has been (1) undue delay, (2) bad faith or dilatory motives on the part of the movant, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, or (5) futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001).

Plaintiff's request to amend comes after fact and expert discovery in the case have been completed and Defendant's motion for summary judgment has been filed. Defendants have credibly shown that their strategy in discovery and motion practice was focused on the existing Plaintiffs and the § 1983 claims asserted in the case. Doc. 96 at 9-10. To permit Plaintiffs to add a new party and change the legal nature of the § 1983 claim at this late stage would unduly prejudice Defendants.

The motion to amend is denied. The Court will enter summary judgment on Plaintiff's § 1983 claims.

**B.     Wrongful Death Claim.**

Plaintiffs assert state wrongful death claims. "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (citing *United Mine Workers of America v.*

*Gibbs*, 383 U.S. 715, 726 (1966)). Nevertheless, "a federal district court with power to hear state law claims has discretion to keep, or to decline to keep, them under the conditions set out in [28 U.S.C.] § 1367(c)." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1089 (9th Cir. 2000). The Court's decision whether to dismiss such claims should be informed by the values "of economy, convenience, fairness, and comity." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) *supplemented*, 121 F.3d 714 (9th Cir. 1997) (citing *Allen,* 92 F.3d at 846; *Executive Software N. Am. v. United States Dist. Court,* 24 F.3d 1545, 1557 (9th Cir. 1994)). Because the wrongful death claims are factually similar to and based on substantially the same allegations as the § 1983 claims, and because discovery in this case has closed and the Court is familiar with the record that has been developed, the Court will retain jurisdiction over these claims.

Defendants move for summary judgment on the wrongful death claim, arguing that there is a statutory presumption under Arizona law that an officer acts reasonably in using physical or deadly force when the officer protects himself from the use of physical force, and that the evidence is clear that Plaintiffs cannot overcome this presumption. Doc. 85 at 21 (citing ARS s. 12-716(A)(1)). Defendants also argue that "no reasonable jury could conclude that Officer Wilson acted unreasonably under the circumstances," that Officer Wilson's actions were justified as a matter of law, and that he cannot be held liable for engaging in justified conduct. Doc. 85 at 22 (citing A.R.S. § 13-413; *Marquez v. City of Phoenix*, 693 F.3d 1167, 1176 (9th Cir. 2012); *Austin v. City of Scottsdale*, 684 P.2d 151, 153-54 (Ariz. 1984)).

Under Arizona law, an action for wrongful death is a statutory negligence action, requiring a showing that the tortfeasor breached a reasonable standard of care. *Walsh v. Advanced Cardiac Specialists Chartered*, 273 P.3d 645, 648 (Ariz. 2012); *Porter v. Arizona Dep't of Corr.*, 2:09-CV-2479-HRH, 2012 WL 7180482, at *3 (D. Ariz. Sept. 17, 2012). Plaintiffs have submitted expert testimony that Officer Wilson violated the standard of care; Defendants' expert disagrees. Docs. 86, ¶¶ 62, 65; 92, ¶¶ 62, 65,

191-93. This factual dispute must be resolved by the jury, not the Court.

Further, the Court cannot accept Defendants' argument that A.R.S. § 13-410(C)(1) provides justification for Wilson's actions as a matter of law. The statute provides that "[t]he use of deadly force by a peace officer against another is justified . . . only when the peace officer reasonably believes that it is necessary . . . [t]o defend himself or a third person from what the peace officer reasonably believes to be the use or imminent use of deadly physical force." *Id.* Again, Plaintiffs' and Defendants' experts disagree on whether a reasonable officer would have believed Wilson's actions were necessary. Docs. 86, ¶¶ 62, 65; 92, ¶¶ 62, 65, 191-93. This factual dispute precludes summary judgment.

### C. Punitive Damages.

Defendants seek summary judgment on Plaintiff's request for punitive damages. Doc. 85 at 22. They argue that a municipality cannot be liable for punitive damages on claims under § 1983 or for wrongful death, and public employees sued in their official capacities are immune from punitive damages. A.R.S. § 12-820.04; *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996). Plaintiffs argue that they have submitted sufficient evidence from which a reasonable jury could conclude that Officer Wilson acted with the intent to harm Decedent, as well as evidence from which the jury could conclude that Chief Dennis was aware of and recklessly ignored Officer Wilson's pattern of erratic and malicious behavior. Doc. 93 at 22.

The only claims remaining in this case are state law claims. Arizona law holds that "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." A.R.S. § 12-820.04. Punitive damages, therefore, are not available.

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Doc. 85) is **granted in part and denied in part**.
2. Plaintiff's motion to amend (Doc. 91) is **denied**.

3. Defendants' motion to file Exhibit F in non-electronic format (Doc. 84) is **granted.**

4. The Court will set a final pretrial conference by separate order.

Dated this 6th day of May, 2014.

_____
David G. Campbell
United States District Judge

- 11 -